IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 23-21138-JAD |
| | ) | |
| CHARLES L. HARRIS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | X | |
| | ) | Adversary No. 23-02091-JAD |
| TAMMY ALLISON HOLLOWAY and ATTORNEY TAMMY ALLISON, PLLC, | ) ) ) | Related to ECF No. 16 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -V- | ) | |
| | ) | |
| CHARLES L. HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | X | |

**<u>MEMORANDUM OPINION</u>**[1]

This adversary proceeding asks whether a debtor's single, profane voicemail, combined with a demand for repayment of personal expenses, rises to the level of a "willful and malicious injury" under 11 U.S.C. § 523(a)(6) so as to except any resulting debt from discharge. The alleged underlying debt is rooted not in a loan or contract, but in a claim for the tort of "intrusion upon seclusion."

---

[1] The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

1

Having carefully reviewed the record, this Court concludes that the Plaintiff[2] has not met her burden and a judgment shall be entered in favor of the Defendant that dismisses this adversary proceeding with prejudice.

**I.**
**INTRODUCTION**

Exceptions to discharge are to be construed narrowly, consistent with the Bankruptcy Code's objective of providing debtors with a "fresh start." See Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998) (citing Gleason v. Thaw, 236 U.S. 558, 562 (1915)); Ins. Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d 1108, 1113 (3d Cir. 1995). The bar for a finding of nondischargeability under section 523(a)(6) is not simply met by proving that a debtor was uncivil or offensive. Rather, it requires a showing of a "debt" resulting from a "willful and malicious injury." 11 U.S.C. § 523(a)(6).

In this case, the Plaintiff asserts that a "threatening" voicemail the Defendant undisputedly left on Ms. Holloway's phone created a debt arising from a tortious invasion of privacy—specifically, intrusion upon seclusion. See *Second Amended Adversary Proceedings Complaint* (the "Amended Complaint") ¶ 48, ECF No. 16. The Plaintiff, however, failed to prove at trial the elements necessary to convert this alleged technical violation of the right to seclusion into a nondischargeable debt.

---

[2] The plaintiffs in this adversary proceeding are Tammy Allison Holloway ("Ms. Holloway") and her law firm Attorney Tammy Allison, PLLC. For ease of reference, this *Memorandum Opinion* and corresponding *Order* shall refer to them collectively as the "Plaintiff."

2

## II.
## FINDINGS OF FACT

Ms. Holloway[3] and Mr. Harris met in July 2022 and had a short-lived consensual romantic relationship. *Transcript of Hearing on Doc #16 Trial on the Amended Complaint, and Doc #45 Motion for Sanctions filed by Defendant* (hereinafter "Trial Tr.") at 12:3–19, ECF No. 59. On August 9, 2022, Ms. Holloway ended the relationship and ceased communications. Trial Tr. 12:16 –19.

The record reflects that Mr. Harris was married at the time he engaged in the brief romantic relationship with Ms. Holloway. Trial Tr. 12:20–24. According to his unrebutted testimony, his wife discovered the affair shortly after the relationship ended, leading to a severe strain in Mr. Harris' personal life. Trial Tr. 40:4-5 & 40:8–15. On August 20, 2022, in the immediate aftermath of this revelation, Mr. Harris left the voicemail at issue on Ms. Holloway's phone.[4] Mr.

---

[3] Through the filings of record, it has come to the Court's attention that Ms. Holloway may prefer to be addressed as Ms. Allison. See *Transcript of the Testimony of Tammy Allison Holloway* (the "Holloway Deposition") at 10:24-11:1, attached as Exhibit A to the *Supplement to Motion for Sanctions*, ECF No. 48. While the Court respects Ms. Holloway's preference, this Court also notes that the matter pending before the Court was commenced under the name of Tammy Allison Holloway. See Amended Complaint ¶ 1. Given how the Amended Complaint is styled, and for the sake of consistency, the Court will continue to identify the Plaintiff as Ms. Holloway throughout this *Memorandum Opinion* and corresponding *Order*. The Court also notes that the Holloway Deposition was neither offered nor admitted into evidence at trial. Nothing contained in the transcript of the same has been considered by the Court in rendering this decision, including the vulgar and coarse language used by Ms. Holloway herself in referring to opposing counsel as a "dumb ass" (Holloway Deposition 7:14), demanding that opposing counsel "shut the fuck up" (4:20-21), calling opposing counsel a "little boy" (5:21, 6:22, & 13:10), making derisive remarks about opposing counsel's "Caucasian throat" (5:15-16), and describing opposing counsel's appearance as having an alleged "big belly" (16:14 & 17:22-23).

[4] Plaintiff asserts in the Amended Complaint that the Defendant ". . . called and left threatening messages and routinely violated a no-contact Order from Allegheny County." Amended Complaint ¶ 50. As discussed *sub judice*, the only voicemail from the Defendant of record was left on Ms. Holloway's phone on August 20, 2022. However, the *Order* prohibiting Defendant from contacting Plaintiff was not issued until August 22nd, two days after the Defendant left the voicemail. See generally *Order*, attached to the Amended Complaint as ECF No. 16-1.

Harris does not contest that at the time he left the voicemail he knew that Ms. Holloway did not want any contact from him. Trial Tr. 12:16-19 & 14:3-6.

In the voicemail, Mr. Harris, audibly upset, accused Ms. Holloway of "blowing up [his] life" and labeled her with a string of vulgar insults, calling her a "fucked up bitch," a "whore," and accusing her of being both abusive and a scammer. Trial Tr. 25:6-7 & 25:21-24. Mr. Harris demanded the immediate return of approximately $2,000, stating, "I want my fucking money back ASAP," referencing sums he had allegedly spent on Ms. Holloway during their brief relationship, including costs for a trip to Florida. Trial Tr. 27:5–10. He further stated that he would pursue her in small claims court in Texas or Maryland and ominously added, "there's going to be consequences at the bar level," alluding to potential repercussions involving Ms. Holloway's law license. Trial Tr. 27:15-18 & 30:8-11. While undeniably crass and offensive, the voicemail contained no express threat of physical harm. The record contains no evidence of further contact between the parties.[5]

---

[5] The evidence admitted at trial is that there was one voicemail from Mr. Harris. At trial, Plaintiff sought to introduce certain recordings (alleged by the Plaintiff to be recordings of multiple messages made by the Defendant and this contention was disputed by the Defendant). However, these recordings were not disclosed in accordance with this Court's pretrial orders and Federal Rule of Civil Procedure 26(a)(3). At trial, and in response to an objection by counsel to the Defendant, Plaintiff's counsel asserted that the use of the additional alleged recordings was proper because they were being used solely for impeachment purposes. This Court determined that the alleged additional recordings were intended as substantive evidence rather than solely for impeachment purposes. Consequently, the alleged additional recordings were excluded pursuant to Federal Rule of Civil Procedure 37(c)(1) and for the reasons stated on the record. See Trial Tr. at 44-49. While Federal Rule of Evidence 613(b) addresses the admissibility of prior inconsistent statements, it does not override the obligation to comply with disclosure requirements. Courts have consistently held that even impeachment evidence must be disclosed if it serves a substantive purpose. See, e.g., Klonoski v. Mahlab, 156 F.3d 255, 270 (1st Cir. 1998)("… the weight of authority seems to be that such evidence is both impeaching and substantive and should be disclosed."), superseded in unrelated part by rule amendment, In re Subpoena to Witzel, 531 F.3d 113, 118 (1st Cir. 2008); Wilson v. AM Gen. Corp., 167 F.3d 1114, 1122 (7th Cir. 1999) (denying defendant's motion at trial to have two individuals

Ms. Holloway did not appear, let alone testify, at trial, and the only witness was Mr. Harris. No other witness (lay or expert) offered evidence of any emotional distress, humiliation, damages, or other injury resulting from the voicemail that is at the heart of this lawsuit. Plaintiff's counsel conceded this evidentiary gap at trial. Trial Tr. 51:5-18.

### III.
### THE ALLEGED DEBT: INTRUSION UPON SECLUSION

The Plaintiff's theory is that Mr. Harris' voicemail constitutes the tort of "intrusion upon seclusion" under Pennsylvania law and that a debt resulting therefrom is nondischargeable under section 523(a)(6) of the Bankruptcy Code.[6] Amended Complaint ¶ 49-51.

Title 11 of the United States Code provides the framework for bankruptcy proceedings, but state law fills in the details regarding the nature and validity of debts. Cf. Butner v. United States, 440 U.S. 48, 48-9 (1979) ("the Bankruptcy Act generally leaves the determination of property rights in the assets of a bankrupt's estate to state law"). It is true that Pennsylvania law recognizes intrusion upon seclusion as a viable tort. See Harris v. Easton Publ'g. Co., 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984). To establish a tortious intrusion upon

---

testify "solely for impeachment purposes" because they were "potential witnesses the whole time" and the defendant failed to name them in their Fed. R. Civ. P. 26(a)(3) pretrial disclosures); Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1221–22 (11th Cir. 2010) (affirming exclusion of evidence of "loss of goodwill" calculation as a category of damages not included in required Rule 26 disclosure of damages sought); S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597–99 (4th Cir. 2003) (upholding exclusion of expert opinion due to failure to disclose ); Yeti by Molly Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001) ("[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)."). Thus, the Court properly exercised its discretion in excluding the alleged additional recordings.

[6] 11 U.S.C. § 101 et seq.

seclusion, a plaintiff must show "an intentional interference with [a person's] interest in solitude or seclusion, either as to his person or his private affairs or concerns." DeAngelo v. Fortney, 515 A.2d 594, 595 (Pa. Super. Ct. 1986); Harris, 483 A.2d at 1384. But, to be actionable, Pennsylvania courts require the intrusion be "substantial" and "highly offensive to the ordinary reasonable [person]." DeAngelo, 515 A.2d at 595; RESTATEMENT (SECOND) OF TORTS § 652B, cmt. d (AM. LAW. INST. 1977); Tagouma v. Investigative Consultant Servs., Inc., 4 A.3d 170, 174–75 (Pa. Super. Ct. 2010)(citation omitted). Furthermore, for the intrusion to create a compensable injury, the plaintiff must establish that it caused "mental suffering, shame or humiliation to a person of ordinary sensibilities." Chicarella v. Passant, 494 A.2d 1109, 1114 (Pa. Super. Ct. 1985)(quoting Hull v. Curtis Publ'g Co., 125 A.2d 644, 646 (Pa. Super. Ct. 1956)(further citation omitted)).

## IV.
## ANALYSIS

### Alleged Intrusion & The Lack of Injury

Under Pennsylvania law, the tort of intrusion upon seclusion is a species of invasion of privacy and requires an intentional intrusion upon the solitude or private concerns of another that is "substantial" and "highly" offensive to a reasonable person. Boring v. Google Inc., 362 F.App'x 273, 279 (3d Cir. 2010) (unpublished) (quoting Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co., 809 A.2d 243, 247 (Pa. 2002)).

In this context, the kind of intrusion sufficient to support liability often involves repeated communications or surreptitious surveillance. Tagouma, 4

A.3d at 177 (public surveillance of individual while praying was not intrusion upon seclusion; neither his thoughts, prayers, nor expressions were viewed); DeAngelo, 515 A.2d 594 (holding two home improvement business solicitations did not constitute substantial intrusion). Further, according to the Restatement (Second) of Torts:

> [T]here is no liability for knocking at the plaintiff's door, or [for] calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

RESTATEMENT (SECOND) OF TORTS § 652B, cmt. d. See also DeAngelo, 515 A.2d at 130 (citing RESTATEMENT (SECOND) OF TORTS).

Here, the Plaintiff presented evidence of a single voicemail, not a persistent course of conduct. Nor was there a physical invasion or publication of private information. Even if the voicemail was "highly offensive," the Court finds that it does not constitute a "substantial" intrusion within the meaning of the law because no evidence of substantiality was put into evidence by the Plaintiff at trial.[7] Accordingly, there is no actionable intrusion upon which to assess liability.

---

[7] There is no doubt that the voicemail left by Mr. Harris was coarse, vulgar, and something that the Court does not condone. However, the mere use of offensive language (even profane or crude language) is not, without more, legally actionable. Courts have repeatedly recognized that offensive language alone does not necessarily give rise to a legally cognizable injury. Indeed, even lawyers, who are held to a higher standard of conduct than laypersons, have used similar offensive language as used by Mr. Harris without facing legal consequences. For example, in Saldana v. Kmart Corp., the Third Circuit addressed a situation where an attorney repeatedly used vulgar language towards other members of the bar, including telling opposing counsel to "go fuck himself," yet the court declined to impose sanctions because, while the remarks were offensive, they did not affect the administration of justice. Saldana v. Kmart Corp., 260 F.3d 228, 369 (3d Cir. 2001). Similarly, in In re Wilcox, 23-23817-B-7, 2024 WL 313738, at *3 (Bankr. E.D. Cal. Jan. 25, 2024), the court rejected the notion that calling a debtor a "piece of shit" via text message could, standing alone, give rise to a sanctionable or actionable conduct under section 362(k) of the Bankruptcy Code. Thus,

7

In reaching this determination, the Court has also considered the cases of Diaz v. D.L. Recovery Corp., 486 F.Supp.2d 474 (E.D. Pa. 2007) and Fausto v. Credigy Servs. Corp., 598 F.Supp.2d 1049 (N.D. Cal. 2009)(decided under California law), both of which involved intrusion upon seclusion claims based on debt collection activities. In each of these cases, the plaintiff was found to have sufficiently stated a claim for relief to avoid a pre-trial dismissal of the action. In Diaz, the defendant left a single, but extraordinarily coercive and humiliating, telephone message, including threats of property seizure and severe personal insults. Diaz, 486 F.Supp.2d at 476. In Fausto, the defendant made over ninety harassing telephone calls, involving repeated hang-ups, failures to identify the caller, and threats to seize the plaintiff's home, resulting in documented emotional and physical distress. Fausto, 598 F.Supp.2d at 1055.

Diaz and Fausto are well-written, and the Court has no quarrel with the opinions of those courts. However, the instant case involving Plaintiff and Defendant is distinguishable. By contrast, the voicemail here, while vulgar, did not threaten physical violence, property seizure, or the public exposure of personal information outside of a judicial or quasi-judicial proceeding. It involved neither repeated conduct nor evidence of actual harm. At most, Mr. Harris hurled insults and made a statement of intent to pursue legal remedies and a possible bar complaint—actions which, standing alone, are not actionable under Pennsylvania tort law. Moreover, unlike in Diaz and Fausto, the record here is

---

according to these courts, the law demands more than mere vulgarity to give rise to a remedy, and section 523(a)(6) is no different.

8

devoid of any evidence of actual injury or emotional distress on the part of the Plaintiff. Thus, even though the voicemail left by Mr. Harris constituted a technical offensive intrusion and was admittedly offensive, the Court finds that it was not of the kind that would be "substantial" and "highly offensive" to a reasonable person.

To be clear—and in response to Plaintiff's counsel's arguments regarding the inference of damages—while some jurisdictions recognize that an intrusion upon one's privacy may constitute a compensable injury even without proof of actual harm, Pennsylvania courts require more. Specifically, they emphasize that the intrusion must be both *substantial* and *highly offensive to a reasonable person*, not merely offensive, to support an actionable claim. DeAngelo, 357 A.2d at 595 (stating there is "no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be offensive to the ordinary reasonable [person]") (quoting RESTATEMENT (SECOND) OF TORTS § 652B, cmt. d); see also Walker v. Grand Cent. Sanitation, Inc., 634 A.2d 237, 243 (Pa. Super. Ct. 1993)("[A]llowing the plaintiff to submit a claim for redress upon the presumption that she was damaged, especially in a case such as this, where the record is patently clear that no harm was suffered, requires the court to blindly follow a rule of law without regard to the reality of the situation presented. We cannot sanction, nor can we find that our Supreme Court has ever intended to sanction, such a rule.")

In the present case, and to repeat what the Court has concluded above, Ms. Holloway's claim is predicated solely on a single voicemail message left by

Mr. Harris. This single voicemail, while admittedly vulgar or offensive, does not meet the threshold of being "substantial" and "highly" offensive. The record lacks <u>any</u> evidence of repeated conduct, physical intrusion, or other aggravating factors that would elevate the offensiveness of the voicemail to the level required under Pennsylvania law to establish an actionable intrusion. Ms. Holloway herself elected to <u>not be present</u> at trial, and thus presented not even a scintilla of evidence to establish any predicate finding that the alleged singular voicemail was a "substantial" intrusion, let alone one that is "highly" offensive. Unlike cases where the circumstances inherently suggest a significant (or "substantial" and "highly offensive") intrusion, the evidence here does not substantiate a claim for even nominal damages. Therefore, under the particularized record before this Court, the mere existence of a single offensive voicemail from Mr. Harris, without more, does not meet the threshold of finding an actionable intrusion upon seclusion claim warranting damages under Pennsylvania law. Thus, whether Pennsylvania law would permit nominal damages for a mere technical violation of the law is of no moment *sub judice*.

### The "Debt" Problem

Section 523(a)(6) of the Bankruptcy Code does not except from discharge all torts or injuries; it excepts only "debts" (i.e., liabilities arising from a claim). The Bankruptcy Code defines a "debt" as a "liability on a claim," and a "claim" as a "right to payment." 11 U.S.C. §§ 101(12) & 101(5)(A). The text does not except from discharge mere technical wrongs or unsubstantiated injuries. See Webb v. Webb (In re Webb), 525 B.R. 226 (Bankr. M.D. Pa. 2015) (recklessly or

10

negligently inflicted injuries are not excepted from discharge) under section 523(a)(6)).[8]

Section 523(a)(6) requires a causal link between debts and injuries. Geiger, 523 U.S. 57, 61 (1998)("nondischargeability takes a deliberate or intention *injury*, not merely a deliberate or intentional *act* that leads to injury" (emphasis in original)). Under the statute, the plaintiff must prove that there is a "debt" that is "for" a "willful and malicious injury." 11 U.S.C. § 523(a)(6). This construction sets forth a temporal sequence—first, the tortious injury must produce a liability, and second, that liability may be subject to a dischargeability determination. As applied here, even if the conduct of Mr. Harris technically constituted a tort, there is no evidence of record that it resulted in a *compensable injury and damages* to Ms. Holloway, and thus, no liability.

The phrase "debt for willful and malicious injury" as used in section 523(a)(6) simply does not cover situations where the conduct yields no legally cognizable injury and/or damages, as there is no identifiable "debt." Thus, it is this Court's view that section 523(a)(6) is not triggered by every technical tort. It applies only when an actionable tort gives rise to a compensable liability.

In sum, without injury there is no debt. Without a debt, there is no occasion to engage in the dischargeability analysis under section 523(a)(6).

---

[8] The Court also notes that even if a technical violation of privacy occurred, there is no evidence of a concrete injury. See TransUnion LLC v. Ramirez, 594 U.S. 413, 417 (2021); Spokeo, Inc. v. Robins, 578 U.S. 330, 340-41 (2016). Both decisions underscore that liability, whether for tort or statutory violation, requires proof of real, actual harm (and not just abstract or technical violations). Plaintiff presented no competent admissible evidence of emotional distress or other compensable injury at trial. Without such proof, there is no "debt" for willful and malicious injury within the meaning of section 523(a)(6).

11

**Dual Role of Bankruptcy Court**

It is settled law that dischargeability proceedings are dual in nature in that a bankruptcy court may determine both the existence and amount of a debt, and whether it is dischargeable. See Schieber v. Hooper (In re Hooper), 112 B.R. 1009, 1012 (B.A.P. 9th Cir. 1990); Edwards v. Sieger (In re Sieger), 200 B.R. 636, 639 (Bankr. N.D. Ind. 1996); and Snyder v. Devitt (In re Devitt), 126 B.R. 212, 215 (Bankr. D. Md. 1991). Yet, where, as here, the Plaintiff has failed to establish even the existence of a compensable injury, there is no occasion for this Court to liquidate damages or declare the resulting liability nondischargeable.

## V.
## CONCLUSION

Bankruptcy law, as Congress crafted it, aims not at punishing bad manners but at granting a fresh start to honest debtors seeking relief from crushing liabilities. The discharge is the centerpiece of the system. But it is not absolute. Congress imposed carefully tailored exceptions, including for debts arising from "willful and malicious injury."

Exceptions to discharge must be construed narrowly. The question here is not whether Mr. Harris' voicemail was distasteful—it was. The question is whether the record establishes, by a preponderance of the evidence, that Mr. Harris inflicted a "willful and malicious injury" giving rise to a "debt" which is nondischargeable under section 523(a)(6) of the Bankruptcy Code.

Since the Plaintiff has not demonstrated the existence of a cognizable injury and debt by the preponderance of the evidence, judgment shall be entered

in favor of the Defendant that dismisses this adversary proceeding with prejudice.

    An appropriate order will follow.

Date: April 7, 2025

                              The Honorable Jeffery A. Deller
                              United States Bankruptcy Judge

Case administrator to mail to:

Debtor
Ryan J. Cooney, Esq.
Martell Harris, Esq.
Rosemary C. Crawford, Chapter 7 Trustee
Office of the United States Trustee

FILED
4/7/25 2:34 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA